UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES DISTRICT JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812
MDD_SAGchambers@mdd.uscourts.gov

July 28, 2025

**LETTER ORDER**

      Re: <u>Imran H. v. Frank Bisignano, Commissioner, Social Security Administration</u>[1]
          Civil Case No. SAG-24-1461

Dear Counsel:

On May 20, 2024, Plaintiff Imran H. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF No. 1. I have considered the record in this case (ECF No. 7) and the parties' filings[2] (ECF Nos. 23, 26, 27). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will DENY Plaintiff's motion for summary judgment, GRANT Plaintiff's alternative motion for remand, REVERSE the Commissioner's decision, and REMAND the case to the Commissioner for further consideration. This letter explains why.

## I.    PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") and Childhood Disability Benefits on June 26, 2017. Tr. 74-75, 318-25. On November 1, 2017, Plaintiff was initially found disabled beginning on April 1, 2015. Tr. 11, 109, 130. During a continuing disability review, Plaintiff was found no longer disabled as of July 1, 2021. Tr. 11, 127-29. That determination was upheld on reconsideration. Tr. 136. On May 16, 2023, an Administrative Law Judge ("ALJ") held a hearing, but the hearing was postponed for additional medical records. Tr. 58-73. On August 8, 2023, the ALJ held a second hearing. Tr. 30-57.

---

[1] Plaintiff filed this case against "Commissioner, Social Security" on May 20, 2024. ECF No. 1. Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Accordingly, Commissioner Bisignano has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] Standing Order 2022-04 amended the Court's procedures regarding SSA appeals to comply with the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), which became effective December 1, 2022. Under the Standing Order, parties now file dispositive "briefs" rather than "motions for summary judgment." Here, Plaintiff filed a motion for summary judgment, or in the alternative, a motion for remand. *See* ECF No. 23.

Imran H. v. Bisignano
Civil No. SAG-24-1461
July 28, 2025
Page | 2

Following the hearing, on August 22, 2023, the ALJ determined that Plaintiff's disability within the meaning of the Social Security Act[3] ended on July 1, 2021, and that Plaintiff has not become disabled again since that date. Tr. 8-21. The Appeals Council denied Plaintiff's request for review, Tr. 1-3, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

II.     **THE ALJ'S DECISION**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). "Ordinarily, the SSA employs a five-step sequential evaluation process" to assess disability. *Figgs v. Saul*, No. JMC-20-334, 2021 WL 3930708, at *1 (D. Md. Sept. 2, 2021) (citing *Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015)). "However, where the SSA granted a claimant benefits and subsequently terminated same, an eight-step continuing disability review evaluation process (for disability insurance benefits claims) and a seven-step continuing disability review evaluation process (for supplemental security income claims) guides the ALJ's analysis." *Id.* (citing 20 C.F.R. § 404.1594). The Court has explained this process as follows:

> At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claimant's impairment is compared to those in the Listing of Impairments [ ]. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is included in the Listing or is equivalent to a listed impairment, disability continues. If the claimant's impairment does not meet or equal a listed impairment, the Commissioner proceeds to step three. At step three, the Commissioner determines whether the claimant has experienced any medical improvement; if so, the Commissioner proceeds to step four, and if not, the Commissioner skips to step five. At step four, the Commissioner determines whether the medical improvement is related to the claimant's ability to work; that is, whether there has been an increase in the claimant's residual functional capacity [ ]. If not, the Commissioner proceeds to step five; if so, the Commissioner skips to step six. At step five—by which point the Commissioner has concluded that the claimant has not experienced medical improvement or the medical improvement is not related to the claimant's ability to work—the [C]ommissioner considers whether any of the exceptions to the medical exceptions to the medical improvement standard apply. 20 C.F.R. §§ 404.1594(d), (e). At step six, provided the medical improvement is related to the claimant's ability to work, the Commissioner determines whether the claimant's current impairments in combination are severe; if not, the claimant is no longer disabled. If so, the Commissioner proceeds to step seven and assesses the claimant's RFC to determine

---

[3] 42 U.S.C. §§ 301 et seq.

>       whether he or she can perform past relevant work experience.  If the claimant can
>       perform his or her past relevant work experience, the claimant is not disabled.  If
>       the claimant cannot perform past relevant work, however, the Commissioner
>       reaches step eight and considers whether, given the claimant's RFC, age, education,
>       and past experience, the claimant can perform other substantial gainful work.

*Id.* (omissions in original) (quoting *Furdon v. Berryhill*, No. 5:18-cv-BO, 2019 WL 1117908, at *2 (E.D.N.C. Mar. 11, 2019)). "Under each of the continuing disability review evaluation processes, there is no presumption of continuing disability." *Id.* at *2 (citation omitted).

   Here, the ALJ first noted that at the time of the comparison point decision ("CPD") date of November 1, 2017—the date on which the SSA had most recently determined that Plaintiff was disabled—Plaintiff had the following medically determinable impairment: depression. Tr. 13. The ALJ also noted at the time of the CPD, Plaintiff's depression was "found to equal section(s) 12.04 of 20 CFR Part 404, Subpart P, Appendix 1." Tr. 13. At step one, the ALJ determined that Plaintiff "engaged in substantial gainful activity." Tr. 13. The ALJ also determined that Plaintiff "has continued to have the same impairments that he had at the time of the CPD[,]" *i.e.*, depression, because the "medical evidence establishes that [Plaintiff] did not develop any additional impairments after the CPD through the date of this decision." Tr. 13. At step two, the ALJ determined that "[s]ince July 1, 2021, [Plaintiff] has not had an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 13. At step three, the ALJ found that "[m]edical improvement occurred on July 1, 2021." Tr. 15. At step four, the ALJ determined that the "medical improvement is related to the ability to work because, by July 1, 2021, [Plaintiff] no longer had an impairment or combination of impairments that met or medically equaled the same listing(s) that was met at the time of the CPD." Tr. 15.

   Having so determined at step four, the ALJ proceeded to step six. There, the ALJ determined that "[s]ince July 1, 2021, [Plaintiff] has continued to have a severe impairment or combination of impairments," which as noted above is depression. Tr. 13, 15. Despite this impairment, the ALJ determined that Plaintiff, since July 1, 2021, retained the residual functional capacity ("RFC") to:

>       perform work at all exertional levels as defined in 20 CFR 404.1567(c) except is
>       able to perform simple, routine tasks for 2 hours before needing a break; unable to
>       perform high quota, production rate pace work where workers must meet strict,
>       hourly quotas; is able to perform simple work-related decisions; occasionally able
>       to interact with supervisors; frequently able to interact with coworkers:
>       occasionally able to interact with the public: is able to tolerate few changes in a
>       routine work setting defined as can adapt to occasional changes in a routine work
>       environment. The claimant's time off task includes time off task can be
>       accommodated by normal breaks.

Imran H. v. Bisignano
Civil No. SAG-24-1461
July 28, 2025
Page | 4

Tr. 15. At step seven, the ALJ determined that Plaintiff had no past relevant work. Tr. 19. At step eight, the ALJ found that Plaintiff could perform jobs that exist in significant numbers in the national economy. Tr. 19. Therefore, the ALJ concluded that Plaintiff's disability ended on July 1, 2021, and Plaintiff has not become disabled again since that date. Tr. 20.

### III.    LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.    ANALYSIS

Plaintiff raises five arguments on appeal, specifically that the ALJ (1) failed to adequately develop the *pro se* proceedings below; (2) made an erroneous finding of medical improvement; (3) failed to evaluate the medical opinions under the proper legal framework; (3) erroneously evaluated Plaintiff's ability to adapt or manage himself; and (5) erroneously found that Plaintiff engaged in substantial gainful activity in 2018. ECF No. 23-1, at 16-29; ECF No. 27, at 9-17. Defendant counters that: (1) the ALJ fully developed the record; (2) substantial evidence supports the ALJ's medical improvement finding; (3) the ALJ properly reviewed the medical opinions in accordance with the correct regulatory framework; (4) substantial evidence supports the ALJ's finding of Plaintiff's moderate limitation in adapting or managing himself; and (5) the ALJ did not err at step one because the ALJ continued with the sequential evaluation. ECF No. 26, at 6-19 n.5.

Pursuant to SSA regulations, claimants are not found to be disabled during periods in which the claimant engages in "substantial gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), which is defined as "work activity that is both substantial and gainful," *id.* § 404.1572. Work activity is "[s]ubstantial" if it "involves doing significant physical or mental activities." *Id.* § 404.1572(a). "Gainful" work activity is "the kind of work usually done for pay or profit, whether or not a profit is realized." *Id.* § 404.1572(b). The SSA has established income guidelines that "set a floor for earnings that presumptively constitute substantial gainful activity." *Adams v. Colvin*, No. 14-1540, 2016 WL 3566859, at *9 (N.D.N.Y. June 23, 2016) (emphasis omitted).

SSA regulations set forth the criteria for determining whether a disability continues or ends. *See* 20 C.F.R. § 404.1594. The regulations provide that a "disability can be found to have ended even though medical improvement has not occurred, if [a claimant] can engage in substantial

Imran H. v. Bisignano
Civil No. SAG-24-1461
July 28, 2025
Page | 5

gainful activity." *Id.* However, before the Commissioner determines that an individual is no longer disabled because he is engaged in substantial gainful activity ("SGA"), the Commissioner first considers whether the individual is entitled to a "trial work period." *Id.* § 404.1594(d)(5). A "trial work period" is a period of nine months – which need not be consecutive – in which an individual may test his ability to work and still be considered disabled. *Id.* § 404.1592(a). After the trial work period has ended, however, the SSA will consider the claimant's activity during the trial work period to determine whether the disability ended at any time after the trial work period. *Id.*

After the nine-month trial work period, the individual may continue to test his or her ability to work in a thirty-six month "reentitlement period." *See* 20 C.F.R. § 404.1592a. Unlike the trial work period, if a beneficiary works during the reentitlement period, the Commissioner may decide that the beneficiary's disability has ceased because the beneficiary is engaged in substantial gainful activity. *See* 20 C.F.R. § 404.1592a(a)(1) (clarifying that "[t]he first time [claimant] work[s] after the end of [his] trial work period and engage[s] in substantial gainful activity, [the SSA] will find that [his] disability has ceased"). When evaluating this "first time" in which the individual works after the trial work period, the Commissioner considers all relevant factors to determine whether the reentitlement period work is substantial gainful activity, including "unsuccessful work attempts." *Id.*

Here, the ALJ determined that "[t]hrough the date of this decision, [Plaintiff] has engaged in substantial gainful activity." Tr. 13. The ALJ noted that "[i]n 2018, [Plaintiff] earned $15,588.34 or $1299 per month, well above the SGA level of $1180.00 per month. In 2019, 2020, and 2021 [Plaintiff] earned $7930.00 in 2019, $7697 in 2020 and $3120 in 2021." Tr. 13. As Plaintiff posits, the ALJ did not explain whether Plaintiff's work activity in 2018 constituted a trial work period. *See* ECF No. 23, at 28-29. Defendant argues that "whether Plaintiff's work could be considered a trial period or not has no effect on the ultimate disability decision, and does not warrant remand" because "the ALJ did not find that Plaintiff's disability had ended because of his substantial gainful activity, but instead continued through the entire sequential evaluation and concluded that there were jobs that existed in the national economy that he could perform with his RFC." ECF No. 26, at 19-20 n.5.

While the ALJ continued with the sequential evaluation process, the ALJ's failure to assess whether Plaintiff's 2018 work activity constituted a trial work period infected later steps in the ALJ's evaluation. For example, at step four, the ALJ found that Plaintiff's medical improvement related to his ability to work because Plaintiff "no longer had an impairment or combination of impairments that met or medically equaled the same listing(s) that was met at the time of the CPD." Tr. 15. As support for the finding that Plaintiff's medical improvement related to his ability to work, the ALJ explained that "[c]ertified earnings records show that in 2018 [Plaintiff] was working at the SGA level. His ability to perform SGA is persuasive that [Plaintiff] had improvement in his ability to work and his impairments no longer met a listing." Tr. 15. Moreover, in assessing Plaintiff's RFC, after examining the objective medical evidence, the ALJ found that Plaintiff's "ability to work at the SGA level since 2017 is persuasive that [Plaintiff] is capable of performing sustained work activity." Tr. 18. In evaluating the medical opinions, the ALJ found Dr. Massion's opinion that Plaintiff "was unable to maintain gainful employment due to difficulty

with concentration and attention" as "even less persuasive given that [Plaintiff] worked at the SGA level in 2018." Tr. 18. The ALJ's reliance on Plaintiff's substantial gainful activity throughout various steps of the sequential evaluation, without a discussion of whether Plaintiff's 2018 work activity constituted a trial work period, frustrates meaningful review of the ALJ's decision. *See Mascio*, 780 F.3d at 636.

Other inadequacies in the ALJ's finding of medical improvement further frustrate meaningful review. A decrease in the medical severity of an impairment sufficient to constitute medical improvement must be substantiated by changes in signs, symptoms, or laboratory findings. 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i). To determine whether medical improvement has occurred, the severity of the claimant's current medical condition is compared to the severity of the condition "at the time of the most recent favorable medical decision that [the claimant was] disabled." *Id.* The medical improvement must also be linked to a claimant's ability to work. *See Lisa D. v. Berryhill*, No. TMD 17-2488, 2018 WL 6696795, at *4 (D. Md. Dec. 20, 2018) (holding that "[t]he ALJ, however, 'must both identify evidence that supports his conclusion and build an accurate and logical bridge from [that] evidence to his conclusion' that medical improvement related to Plaintiff's ability to work[.]") (quoting *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (internal quotations omitted), *superseded on other grounds as recognized in Rogers v. Kijakazi*, 62 F.4th 872, 878-80 (4th Cir. 2023))).

Plaintiff asserts that the ALJ, in finding medical improvement, failed to "demonstrate an understanding of the unique nature of psychiatric conditions" and did not conduct a thorough review of the medical evidence. ECF No. 23-1, at 20-22. The Court agrees. In finding that medical improvement occurred on July 1, 2021, the ALJ found that:

> [t]he medical evidence supports a finding that, by July 1, 2021, there had been a decrease in medical severity of the impairments. The claimant testified that he completed a Bachelor of Science degree in 2017 at the University of California, Davis. His ability to study, focus, interact with his classmates, and graduate with a 3.6 GPA support a finding that the claimant had medical improvement in his symptoms. Records show that the claimant reported that his symptoms were managed despite poor focus at times.

Tr. 15. However, the ALJ's decision lacks an actual comparison of the severity of Plaintiff's medical conditions within the definition of medical improvement, such as a comparison of symptoms, signs, or laboratory findings. *See* 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i); *see Tammy Lynn L. v. O'Malley*, No. ADC-23-1618, 2024 WL 624001, at *4-5 (D. Md. Feb. 14, 2024) ("The lack of direct comparison to Plaintiff's most recent favorable medical decision of disability falls short of the ALJ's duty to build an accurate and logical bridge from the evidence to her conclusion.") (quoting *Lisa D.*, 2018 WL 6696795, at *4-5 ("Medical improvement is defined as 'any decrease in the medical severity of [the] impairment(s) *which was present at the time of the most recent favorable medical decision*' of disability.")).

Specifically, Plaintiff points to evidence that she argues the ALJ failed to appropriately consider, in contravention of *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341 (4th Cir. 2023), which appears to contradict the ALJ's finding of decreased medical severity. *See* ECF No. 23-1, at 10-11, 20-22. For example, while the ALJ omits the discussion of evidence in 2021—outside of July 2021—careful review of a March 9, 2021 examination shows Plaintiff reported his mood had been "up and down" and that the medical provider observed Plaintiff's "depression has been worse in context of psychosocial stressors (mother's housing, unemployment)." Tr. 1024, 1027.

The ALJ highlighted that, in November 2022, Plaintiff "was future oriented with no issues with cognition or memory. [Plaintiff] was future oriented about completing school. Weeks later, [Plaintiff] reported that he was not taking the medication as prescribed and that he was doing better. He reported additional stress in looking for a job and finding housing." Tr. 17-18. Careful review of the November 1, 2022 examination shows that Plaintiff admitted to having "fleeting thought of suicide"; rated "his depression a 7 out of 10, with 10 being severe/unbearable"; and reported "concentration and focus issues," "sleep disturbance, low energy, pleasurable activity disinterest, low self-esteem, poor concentration, depressed mood/crying a lot, hopeless/helpless-ness," and "increased irritability, increased distractibility, decreased need for sleep, racing thoughts." Tr. 1130-31. The medical provider observed, among other things, thought blocking process; blunted, euthymic affect; depressed, sad mood; guarded attitude; poor insight; poor judgment; and moderate suicidal risk. Tr. 1131-32. Notably, as noted above, while the ALJ highlighted that Plaintiff "was future oriented about completing school[,]" *see* Tr. 17-18, this appears to be in the context of the medical provider's following statement: "Suicidal Risk: Moderate . . . Suicidality Comments: Patient currently denies any SI, SIB or PDW; but reports fleeting thoughts of suicide. He currently denies any intent or plan. Future oriented to treatment and hopefully completing school[,]" Tr. 1132.

Carefully reviewing the November 8, 2022 examination, it appears that the ALJ failed to mention that during this examination, among other things, Plaintiff reported "difficulties concentrating due to trying to eliminate negative thoughts"; stated his energy was "low" and "could be better"; and rated his depression as a "5 out of 10, with 10 being severe/unbearable." Tr. 1117. The medical provider observed, among other things, thought blocking process; blunted, constricted affect; depressed mood; poor insight; poor judgment; and moderate suicidal risk. Tr. 1118-19. Moreover, the ALJ noted that Plaintiff "was discharged in January 2023 after he was a no show at two appointments," *see* Tr. 18, but careful review of the January 2023 record shows that the medical provider noted that Plaintiff had "continued depressive" symptoms and that the "therapist recommends higher level o[f] care[,]" Tr. 1115.

Further, in rejecting Dr. Balu's opinion, the ALJ reasoned that "[r]ecords from the April 2023 appointment show that [Plaintiff] was able to direct attention and read." Tr. 19. Careful review of the April 2023 exam shows that Dr. Balu noted that Plaintiff reported "[d]epression is bad, sadness, no crying spells, isolate self, feeling helpless, no [suicidal ideation] and '[f]eel like i[f] I didn't exist.'" Tr. 1156. Plaintiff described his symptoms as "currently 7/10 in severity" and reported "decreased sleep, depression and low energy, motivation low." Tr. 1156. Dr. Balu

observed Plaintiff to present with the following, among other things: "Attitude in the interview consisted of aggression and evasiveness" and "Mood was depressed and fearful affect was appropriate, anhedonic, depressed and detached, thought content was appropriate with no signs of delusions or suicidal ideations." Tr. 1157.

These facts and observations constitute evidence pointing to a disability finding. However, the ALJ's discussion regarding medical improvement omitted this evidence. *See Lisa D.*, 2018 WL 6696795, at *5 (remanding where the ALJ failed to build an accurate and logical bridge from the evidence to the ALJ's finding of medical improvement). Therefore, the Court concludes that the ALJ's finding of medical improvement was unsupported by substantial evidence because the ALJ failed to address such disability evidence in determining medical improvement occurred. *See Shelley C.*, 61 F.4th at 362 (remanding where the ALJ "cherry-picked from the record, highlighting [Plaintiff's] good moments and bypassing the bad. This violated the ALJ's 'obligation to consider all relevant medical evidence,' which prohibits him from 'simply cherrypick[ing] facts that support a finding of nondisability while ignoring evidence that points to a disability finding.'") (quoting *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (brackets in original)); *see also Lasharne W. v. Comm'r, Soc. Sec. Admin.*, No. SAG-21-2603, 2023 WL 2414497, at *4 (D. Md. Mar. 8, 2023) (referring to *Shelley C.*, 61 F.4th at 360 ("The ALJ improperly ignored the waxing and waning nature of depression symptoms by citing only to treatment notes where the claimant was stable and by omitting evidence of the claimant's subsequent periods of intense depression symptoms.")).

Moreover, the Court does not find substantial evidence of a "decrease in the medical severity of [Plaintiff's] impairment(s)" that related to his ability to work. *See Lisa D.*, 2018 WL 6696795, at *4; *see* 20 C.F.R. § 404.1594(b)(1). The ALJ determined that Plaintiff's medical improvement related to his ability to work because "[c]ertified earnings records show that in 2018 [Plaintiff] was working at the SGA level. His ability to perform SGA is persuasive that [Plaintiff] had improvement in his ability to work and his impairments no longer met a listing." Tr. 15. As noted above, the ALJ fails to explain whether Plaintiff's 2018 work activity constituted a trial work period, and the effect this has on the substantial gainful activity finding. As such, the Court finds that the ALJ failed to build an accurate and logical bridge from the evidence the ALJ identified to the ALJ's conclusion that medical improvement on July 1, 2021, related to Plaintiff's ability to work. *See Lewis*, 858 F.3d at 868 ("The ALJ's failure to build an accurate and logical bridge from the evidence to his conclusion constitutes reversible error." (internal quotation marks and citation omitted)).

Lastly, the Court declines to award benefits, as Plaintiff requests. ECF No. 23-1, at 22. The Fourth Circuit has long adhered to the principle that district courts may reverse a case for payment of benefits only in "rare circumstances." *Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013). Those rare circumstances exist only where the record clearly established disability and "reopening the record for more evidence would serve no useful purpose." *Breeden v. Weinberger*, 492 F.2d 1002, 1012 (4th Cir. 1974). Otherwise, the "proper course" is to "remand to the agency." *Radford*, 734 F.3d at 296. Here, an award of benefits is improper because the record does not reflect a "clear establishment" of disability. *Breeden*, 492 F.2d at 1012.

Imran H. v. Bisignano
Civil No. SAG-24-1461
July 28, 2025
Page | 9

Because the case is being remanded on these grounds, I need not address Plaintiff's other arguments. On remand, the ALJ is welcome to consider these arguments and make any required adjustments to the opinion. Additionally, in remanding for further explanation, the Court expresses no opinion as to whether the ALJ's conclusion that Plaintiff's disability ended on July 1, 2021 and that Plaintiff has not become disabled again since that date, is correct.

## V.   CONCLUSION

For the reasons set forth herein, Plaintiff's motion for summary judgment, ECF No. 23, is DENIED and Plaintiff's alternative motion for remand, ECF No. 23, is GRANTED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case. Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States District Judge